UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-00739-TBR

LOGAN HICKEY                                                                           PLAINTIFF

v.

GENERAL ELECTRIC COMPANY                                              DEFENDANT

**Memorandum Opinion and Order**

Plaintiff Logan Hickey alleges that after General Electric failed to accommodate his disability and terminated his employment, it falsely told Kentucky authorities that he had voluntarily quit. Because of this misrepresentation, Hickey claims, he was deprived of unemployment benefits for some period of time. Ultimately, the Commission reversed its initial determination, and awarded Hickey full benefits. He brought suit against GE, seeking redress for the harm he suffered due to being temporarily deprived of his unemployment benefits, as well as punitive damages.

Under Kentucky law, an employer commits a crime when it "knowingly makes a false statement or representation . . . to prevent or reduce the payment of [unemployment] benefits to any worker entitled thereto." KRS 341.990(6)(a). GE now moves to dismiss Count III of Hickey's complaint, arguing that he may not bring a civil claim based upon GE's alleged violation of that statute, KRS 341.990(6)(a). [DN 9; DN 9-1 at 1-8.] Further, GE contends that even if Hickey's third claim is cognizable, he has nothing to recover, because he eventually received the unemployment benefits to which he was entitled. [DN 9-1 at 8-12.] Hickey

responded, [DN 10-1], and GE replied, [DN 11.] This matter is ripe for adjudication. Because GE's motion necessarily turns upon a novel issue of state law, the Court will certify a question to the Kentucky Supreme Court pursuant to Kentucky Rule of Civil Procedure (CR) 76.37.

## I. Facts and Procedural History[1]

For a time, Plaintiff Logan Hickey was employed as a first-shift production line worker at General Electric's Appliance Park in Louisville, Kentucky. [DN 1-2 at 4.] Several months after he was hired, GE sought to move Hickey to second shift. [*Id.*] Hickey suffers from attention-deficit/hyperactivity disorder (ADHD), a disability that "interferes with his ability to regulate his sleep, focus his attention on tasks, and keep track of basic tasks with full mental cognition." [*Id.*] Although Hickey uses medicine to manage his ADHD, he found it difficult "to maintain full consciousness and alertness on the production line" during GE's second shift. [*Id.*] After consulting with his doctor, Hickey requested through GE's human resources department that he be placed back on first shift. [*Id.* at 4-5.] GE refused and placed him on unpaid leave. [*Id.* at 5-6.] Following negotiations between Hickey, his legal counsel, and GE's medical department, Hickey alleges that GE gave him a choice: he could either change his medication regimen and resume working second shift or resign. [*Id.* at 6.] Eventually, Hickey received a letter from GE on October 6, 2015, informing him that his employment was being terminated, effective on that date. [*Id.* at 6-7.] Hickey's union later informed him that GE

---

[1] Because this matter is before the Court upon GE's motion to dismiss, the relevant facts are taken from Hickey's complaint.

2

told the union Hickey's termination date was October 13. [*Id.* at 7.] By this time, Hickey had been off work for a month. [*Id.*]

After he was let go, Hickey sought unemployment benefits. [*Id.*] GE opposed Hickey's application for benefits, telling the Kentucky's Division of Unemployment Insurance that Hickey had voluntarily quit. [*Id.*] Based upon that representation, Hickey's claim for unemployment was initially denied. [*Id.*] Only after successive appeals to the Division referee and the Kentucky Unemployment Insurance Commission (KUIC), respectively, did Hickey receive the benefits to which he was entitled. [*Id.* at 7, 12.]

Hickey then brought the instant suit in Jefferson County, Kentucky Circuit Court. In the first two claims of his tripartite complaint, Hickey alleges that GE violated both the Kentucky Civil Rights Act (KCRA) and the Americans with Disabilities Act (ADA) by failing to accommodate his disability and by retaliating against him when he sought an accommodation. *See* [*id.* at 4-10.] In his third claim, styled "Wrongful Opposition to Unemployment Insurance Benefits," Hickey asserts that GE violated KRS 341.990(6)(a) by informing Kentucky authorities that he voluntarily resigned, when he was in fact terminated. [*Id.* at 11 (emphasis removed).] That statute makes it a crime to "knowingly make[] a false statement or representation . . . to prevent or reduce the payment of benefits to any worker entitled thereto." KRS 341.990(6)(a). Hickey further claims that as a member of the class of persons KRS 341.990(6)(a) was designed to protect, he is entitled to

3

recover from GE "such damages as he sustained by reason of [GE's] violation" under KRS 446.070, Kentucky's negligence per se statute. [DN 1-2 at 12.]

GE removed Hickey's suit to federal court. *See* [DN 1.] Jurisdiction is proper because this Court has original subject-matter jurisdiction over Hickey's federal claims and supplemental jurisdiction over his state-law claims, and this district and division embraces the place where his state suit was filed. 28 U.S.C. §§ 1331, 1367(a), 1441. GE now asks this Court to dismiss Hickey's third claim, arguing that Kentucky law does not recognize a private right of action under KRS 341.990(6)(a), and even if it did, Hickey has nothing left to recover. *See* [DN 9; DN 9-1.] Hickey responded, [DN 10-1], and GE replied, [DN 11.]

## II. Discussion

This case presents a matter of apparent first impression. No court interpreting Kentucky law has decided whether a plaintiff may use KRS 446.070 as a vehicle to maintain a standalone claim for his former employer's violation of KRS 341.990(6)(a), nor is the answer to that question readily apparent based upon the statutory scheme and Kentucky precedent. Because Hickey's claim involves a novel issue of state law, this Court could in its discretion decline to exercise supplemental jurisdiction over Count III of Hickey's complaint. *See* 28 U.S.C. § 1367(c). However, to avoid piecemeal litigation and to obtain a definitive answer that will provide guidance in similar cases, the Court will instead certify a question of law to the Kentucky Supreme Court.

4

Nearly eight decades ago, the Kentucky General Assembly enacted the state's first Unemployment Compensation Act "to provide benefits for . . . those employees who have been forced to leave their employment because of forces beyond their control." *Ky. Unemployment Ins. Comm'n v. Kroehler Mfg. Co.*, 352 S.W.2d 212, 214 (Ky. 1961). "In order to receive [unemployment] benefits, the worker must prove (or the employer, conversely, disprove) that he or she was involuntarily separated from employment without good cause on the employer's part. *Bd. of Ed. of Covington v. Gray*, 806 S.W.2d 400, 402 (Ky. Ct. App. 1991). To that end, Kentucky's unemployment scheme criminalizes the making of certain false statements. Pertinent to this case,

> [a]ny person who knowingly makes a false statement or representation, or who knowingly fails to disclose a material fact to prevent or reduce the payment of benefits to any worker entitled thereto, or to avoid becoming or remaining subject to this chapter, or to avoid or reduce any payment required of an employing unit under this chapter shall be guilty of a Class A misdemeanor unless the liability avoided or attempted to be avoided is one hundred dollars ($100) or more, in which case he shall be guilty of a Class D felony.

KRS 341.990(6)(a). The statutory scheme does not provide for a private right of action based upon the violation of the false statement provision.

To support his third claim against GE, Hickey relies upon KRS 446.070. Commonly known as Kentucky's negligence per se statute, KRS 446.070 provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." The Kentucky Supreme Court has held that "the statute applies when the alleged offender violates a statute and

the plaintiff comes within the class of persons indented to be protected by the statute." *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011) (citing *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99-100 (Ky. 2000)). Further, "[t]he statute must have been specifically intended to prevent the type of occurrence that took place, and the violation must have been a substantial factor in causing the result." *Hargis v. Baize*, 168 S.W.3d 36, 46 (Ky. 2005) (citing *Isaacs v. Smith*, 5 S.W.3d 500, 502 (Ky. 1999)). KRS 446.070 will only apply, however, where "the statute is penal in nature, or where by its terms the statute does not prescribe the remedy for its violation." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985) (citing *Hackney v. Fordson Coal Co.*, 230 Ky. 362, 19 S.W.2d 989 (1929)). In other words, "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Id.* (citations omitted).

Courts applying Kentucky law have presumed that KRS 446.070 provides a cause of action for violation of Kentucky's criminal statutes under a variety of circumstances: criminal assault, *Readnour v. Gibson*, 452 S.W.3d 617, 621 (Ky. Ct. App. 2014); filing an illegal lien, *Ford v. Faller*, 439 S.W.3d 173, 177 (Ky. Ct. App. 2014); endangering the welfare of a legally incompetent person, *Pace v. Medco Franklin RE, LLC*, No. 1:12-CV-00132, 2013 WL 3233469, at *3 (W.D. Ky. Jun. 25, 2013); and failing to report child abuse, *Compton v. City of Harrodsburg*, No. 5:12-cv-302-JMH, 2013 WL 1993235, at *2 (E.D. Ky. May 20, 2013). But no court, state or federal, has recognized a negligence per se action based upon a defendant's

6

violation of KRS 341.990(6)(a), the statute at issue here.  Neither has a court foreclosed the possibility of such a claim.  As such, GE's motion calls upon this Court to "make [the] best prediction, even in the absence of direct state court precedent, of what the Kentucky Supreme Court would do if it were confronted with this question."  *Managed Health Care Assoc., Inc. v. Kethan*, 209 F.3d 923, 927 (6th Cir. 2000) (quoting *Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir. 1988)).

While no court with final authority has spoken to this particular issue, GE argues that several have come close.  GE leans most heavily upon the Eastern District's opinion in *McGuire v. Bourbon Community Hospital*, No. 04-480-KSF, 2006 WL 208826 (E.D. Ky. Jan. 25, 2006).  Indeed, the facts of *McGuire* are similar: the plaintiff alleged that after she was terminated in retaliation for seeking additional overtime pay, her employer "wrongfully attempted to prevent [her] from receiving unemployment benefit compensation." *Id*. at *2.  Although her application for benefits was initially denied by the Division of Unemployment Insurance, the plaintiff was eventually awarded benefits on appeal.  *Id*.  The court granted the defendant summary judgment, holding:

> [I]t is not clear to the Court exactly *how* the defendant wrongly interfered with the plaintiff's attempts to obtain unemployment compensation benefits.  If it is the plaintiff's suggestion that opposing an application and providing information in response to an agency request were sufficient to establish unlawful interference by an employer, then all employee applications would be automatically approved and an employer would never have an opportunity to oppose them.

*Id*. at *5.  However, *McGuire* is procedurally distinguishable from the case at bar. The court in *McGuire* was called to rule upon the defendant's motion for summary

7

judgment, not a motion to dismiss. By that time, it appears that the plaintiff had abandoned her unemployment interference claim, the court noting that "[t]here is nothing in the record to expand upon this claim . . . and the plaintiff does not respond to the defendant's motion for summary judgment on this point." *Id.* What's more, the Eastern District's holding in *McGuire* does not foreclose the type of claim Hickey is bringing. Hickey does not allege only that GE "oppos[ed] [his] application and provid[ed] information in response to an agency request." *Id.* He contends that GE went further by making "knowingly false statements to the Division to prevent, delay, or reduce" Hickey's unemployment benefits. [DN 1-2 at 11.] *McGuire* does not extend as far as GE suggests.

    GE also points to *Kentucky Employers Mutual Insurance v. Coleman*, 236 S.W.3d 9 (Ky. 2007), arguing that Hickey's claim is "analogous." [DN 9-1 at 5.] There, the Kentucky Supreme Court held that Kentucky's Workers' Compensation Act barred a worker's bad faith claim against an insurance carrier. *Coleman*, 236 S.W.3d at 10. Importantly, though, the court relied upon two provisions not present in Kentucky's unemployment statutes. First, the court recognized that the Workers' Compensation Act provides "the exclusive remedy for work-related injuries, assuming certain requirements . . . are met." *Id.* at 13. The Act's exclusive remedy provision "shield[s] a covered employer and its insurer from any other liability to a covered employee for damages arising out of a work-related injury." *Id.* (quoting *Travelers Indemnity Co. v. Reker*, 100 S.W.3d 756, 760 (Ky. 2003)). Unlike the Workers' Compensation Act, Kentucky's unemployment scheme

8

does not contain an exclusivity provision. *See generally* KRS Chapter 341. Second, the Workers' Compensation Act contains an administrative remedy allowing the ALJ to award costs and fees for bad faith conduct. *Coleman*, 236 S.W.3d at 14. GE points to no comparable remedies in the Unemployment Compensation Act. Instead, the state, not the worker, is the beneficiary of statutory penalties awarded under the unemployment scheme. *See* KRS 341.540(7) (employer who knowingly violates certain statutory provisions subjected to higher contribution rate); KRS 341.990(1)-(6), (11) (criminal penalties for violations of the Act); KRS 341.990(9)-(10) (civil monetary penalties assessed against persons violating provisions relating to contribution rate must "be deposited in the unemployment compensation administration account"). Unlike the plaintiff in *Coleman*, Hickey cannot seek a remedy for GE's alleged wrongful acts by availing himself of the administrative scheme, because the Unemployment Compensation Act does not provide for the remedy he seeks.

The other cases cited by GE also miss the mark, if only by a slim margin. GE states, correctly, that federal district courts in Kentucky have previously held that a former employer's opposition to a worker's application for unemployment benefits cannot provide the basis for a retaliation claim. *See Spencer v. CSL Plasma, Inc.*, No. 3:10-CV-00262-H, 2011 WL 4054715, at *7 (W.D. Ky. Sept. 12, 2011); *Hatton v. United Parcel Service*, No. 05-97-JBC, 2006 WL 1895724, at *3 (W.D. Ky. July 7, 2006). But the claims at issue in *Spencer* and *Hatton* were brought under the Kentucky Civil Rights Act, not KRS 446.070. Similarly,

9

Hickey's standalone claim is distinguishable from cases holding that GE's alleged actions cannot give rise to claims for outrage or defamation. *See, e.g.*, *Horvath v. Knight & Wilson, Inc.*, No. 4:06-CV-00011-GTE, 2006 WL 827313, at *2 (E.D. Ark. Mar. 28, 2006) (outrage); *Rome-Bienemy v. Children's Hosp.*, No. 14-1020, 2015 WL 8600689, at *10 (E.D. La. Dec. 14, 2015) (slander). Hickey is not bringing his wrongful opposition claim through the vehicle of an already-established tort. Instead, he seeks to establish a heretofore unrecognized cause of action under Kentucky law. Kentucky's highest court should get the first bite at this apple.

Two final points bear mentioning. GE contends that Hickey's claim is an end-run around Kentucky's "general rule that a civil action for damages will not lie for perjury made during litigation either by a party or a witness." *Lawson v. Hensley*, 712 S.W.2d 369, 370 (Ky. Ct. App. 1986). But, as GE acknowledges, statements made during administrative and quasi-judicial proceedings are protected by only a qualified privilege. *Philpot v. Best Buy*, No. 2012-CA-00235-MR, 2013 WL 3357621, at *4 (Ky. Ct. App. July 5, 2013) (citing *Hawkins v. Miller*, 301 S.W.3d 507, 509 (Ky. Ct. App. 2009)). Assuming that a qualified privilege applies to GE's alleged representation to the Division of Unemployment Insurance, Hickey could defeat that privilege by showing that GE acted with actual malice. *Hawkins*, 301 S.W.3d at 509.[2]

---

[2] On this point, GE cites this Court's earlier holding that under Kentucky law, "fil[ing] false affidavits with the Workers' Compensation Board . . . does not constitute a cause of action for damages." *Coker v. Daniel Cosnt. Co.*, 664 F. Supp. 1079, 1081 (W.D. Ky. 1987). But *Coker* was decided well before *Hawkins*, where the Kentucky Court of Appeals held that the privilege in administrative and quasi-judicial proceedings is qualified, not absolute. *Hawkins*, 301 S.W.3d at 509.

10

Finally, GE argues that even if Hickey's claim exists and is not barred by the litigation statements privilege, he has not alleged any recoverable damages. While it is true that a plaintiff may not recover through KRS 446.070 when his damages are "based on conjecture or speculation," *Michals v. William T. Watkins Memorial United Methodist Church*, 873 S.W.2d 216, 220 (Ky. Ct. App. 1994), Hickey's allegations go further. He avers (and GE denies) that GE's misrepresentation caused Hickey to lose two or three weeks of benefits. *See* [DN 10-1 at 10; DN 11 at 5-6.] Moreover, Hickey alleges that he and his family were denied "basic subsistence" as a result of GE's actions, and that GE's "malicious" conduct entitles him to punitive damages. [DN 1-2 at 12]; *see* KRS 411.184. Taking Hickey's allegations as true, as this Court must at this stage of the case, Hickey has pleaded concrete damages sufficient to survive GE's motion to dismiss.[3]

The only question left, then, is the proper disposition of this case. Because Hickey's third claim "raises a novel or complex issue of State law," this Court could decline to exercise supplemental jurisdiction over that claim. 28 U.S.C. § 1367(c)(1). However, district courts have "broad discretion in deciding whether to exercise supplemental jurisdiction," *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996), and "the default assumption is that the court will exercise supplemental jurisdiction over all related claims," *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998). Alternatively, Kentucky's procedural rules provide a mechanism by which this Court can ask the

---

[3] Of course, the Kentucky Supreme Court may define the parameters of Hickey's proposed tort, including the nature of recoverable damages, as it sees fit.

11

Kentucky Supreme Court to weigh in when "it appears . . . that there is no controlling precedent in the decisions of the Supreme Court and the Court of Appeals of [Kentucky]." CR 76.37(1). "The decision to certify a question of state law to the state's highest court lies within the sound discretion of the district court," and the Court may do so upon its own motion. *Watson v. Cartee*, 817 F.3d 299, 306 (6th Cir. 2016) (internal quotation marks and citation omitted); CR 76.37(2). After reviewing the applicable case law and the parties' submissions, and bearing in mind the paramount importance of comity between state and federal courts, the Court believes that certification is the wiser approach.

### III. Conclusion and Order

For the foregoing reasons, IT IS HEREBY ORDERED:

(1) The Court intends to certify the following question to the Supreme Court of Kentucky:

> May a plaintiff bring suit through KRS 446.070 for a violation of KRS 341.990(6)(a), Kentucky's criminal prohibition against making false statements during unemployment proceedings?

The parties SHALL FILE any objections to the phrasing of this question on or before **Wednesday, March 15, 2017**, after which time the Court shall order the question certified in accordance with Kentucky Rule of Civil Procedure 76.37;

(2) GE's partial motion to dismiss [DN 9] is DENIED with leave to refile following the conclusion of proceedings before the Kentucky Supreme Court.

(3) A telephonic scheduling conference **shall be held Friday, March 31, 2017** at **11:00 a.m. Eastern time**. The Court shall place the call to counsel.